## CIRCUIT COURT OF ESSEX COUNTY

W. R. Jessie, Jr.

v.

Frank King et al.

March 15, 1999

BY JUDGE JOSEPH E. SPRUILL, JR.

We address here issues raised in a bill of complaint to enforce a mechanic's lien.

Frank King was the owner of a parcel of property in Essex County which he was offering to a bank as collateral for a loan. The bank advised King that before the loan could be approved, underground fuel tanks would have to be removed and the required clearances from the Department of Environmental Quality (D.E.Q.) would have to be obtained. King contracted with W. R. Jessie, Jr., to do this work. Jessie removed the underground tanks. Because the environmental aspects of this project were beyond his expertise, Jessie engaged B & C Services, Inc., an environmental contractor, to handle this portion of the job.

Before the work was completed, King left the area, the bank loan was not obtained, and Jessie was not paid.

On January 21, 1998, Jessie filed a memorandum of mechanic's lien against the property. On June 3, 1998, Jessie filed his bill of complaint to enforce his lien. In March 1998, a secured noteholder foreclosed on King's property, and United Leasing became the owner of the property. United Leasing objects to the enforcement of the lien on three grounds: (1) some of the work included in the lien was performed more than 150 days prior to the date the memorandum of lien was filed; (2) the balance of the work included in the lien was performed by another contractor, not a subcontractor, and therefore these sums must be excluded; and (3) Jessie erroneously contends that the last work on the project was completed November 21, 1997, and that

what was done on that date was a ruse or sham, the purpose of which was to extend the time within which the memorandum of lien could be filed. We will address these objections in turn.

Virginia Code § 43-4 provides that "the lien claimant may file any number of memoranda but no memorandum filed pursuant to this chapter shall include any sums due for labor or materials furnished more than 150 days prior to the last day on which labor was performed or materials furnished to the job preceding the filing of such memorandum." United Leasing contends, and Jessie now concedes, that this precludes the inclusion of $5,500 of the lien because this work was done more than 150 days prior to the filing of the lien. Accordingly, the lien amount must be reduced by $5,500.

United Leasing next contends that B & C Services, Inc., was not in fact a subcontractor but was rather a contractor and, as such, should have filed its own lien. The evidence, however, does not support this contention. Jessie testified that he hired B & C Services, Inc., to perform this work. B & C Services, Inc., confirms this. Jessie testified that even though he has been paid nothing thus far for his work, he paid between $700 and $800 to B & C as compensation for its services in the early stages of this project. This evidence is undisputed. Jessie acknowledges his responsibility to pay the balance to B & C regardless of the outcome of this litigation. It appears that B & C sent statements for its services directly to King, United Leasing, and/or D.E.Q., but it had no financial arrangement with either of these parties. The evidence establishes that B & C was in fact a subcontractor of Jessie.

Finally, United Leasing argues that on November 21, 1997, Jessie and Mr. Barnes of B & C went to the premises and took water samples but did not send the samples in to D.E.Q. The sole purpose of this activity, claims United Leasing, was to extend the period within which Jessie could file his lien. Section 43-4 of the Code allows for the filing of a lien not later than ninety days from the last day of the month in which labor is performed or materials furnished and in no even later than ninety days from the time when work is otherwise terminated. The work on this project has not been completed yet. The last work was done November 21, 1997. Both Jessie and Barnes testified that the water samples were taken in good faith. The reasons the samples were not sent to D.E.Q. are unclear. However, a conclusion that this activity was for an improper purpose could only be based on speculation. There is no evidence of this fact, and circumstances do not necessarily lead to such a conclusion. Indeed, if Jessie were concerned about time running out, he could easily have filed his lien in November, 1997, or at any time prior to January 21, 1998.

For these reasons, we find that Jessie is entitled to enforcement of a valid mechanic's lien of $16,157.47, plus interest from January 21, 1998 (this being the amount of the original lien, $21,657.47, less $5,500, which must be excluded because the work was performed beyond the 150-day period).